1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY B.,[1] <br><br> Plaintiff, <br><br> v. <br><br> LELAND DUDEK, Acting Commissioner of Social Security,[2] <br><br> Defendant. | Case No. 2:24-cv-02655-PD <br><br> **MEMORANDUM OPINION AND ORDER AFFIRMING AGENCY DECISION** |

Plaintiff challenges the denial of his application for Social Security Disability Insurance Benefits.   For the reasons stated below, the decision of the Administrative Law Judge is affirmed.

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the United States Judicial Conference.

[2] Leland Dudek became the Acting Commissioner of Social Security on February 18, 2025, and is substituted as Defendant in this suit.  *See* 42 U.S.C. § 405(g).

## I.    Pertinent Procedural History and Disputed Issues

On November 6, 2020, Plaintiff protectively filed an application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), alleging disability beginning March 27, 2019. [Administrative Record ("AR") 238-241.][3]  Plaintiff's application was denied administratively on July 28, 2021, and upon reconsideration on December 20, 2021.  [AR 31, 111-20.]  Plaintiff requested a hearing, which was held via telephone due to the COVID-19 pandemic on December 5, 2022, before an Administrative Law Judge ("ALJ").  [AR 46-77.]  Plaintiff appeared with counsel, and the ALJ heard testimony from Plaintiff and a vocational expert. [Id.]  On March 14, 2023, the ALJ issued a decision finding that Plaintiff has not been under a disability as defined by the SSA, from March 27, 2019, through the date of decision.  [AR 31-41.]  The Appeals Council denied Plaintiff's request for review on February 1, 2024, rendering the ALJ's decision the final decision of the Commissioner.  [AR 1-6.]

The ALJ followed the five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.  *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995), *superseded on other grounds by regulation as stated by Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022); 20 C.F.R. § 416.920(a).  At step one, the ALJ found that Plaintiff met the insured status requirements of the SSA through December 31, 2025, and had not engaged in substantial gainful activity since his alleged onset date, March 27, 2019.  [AR 33 ¶¶ 1, 2.]

At step two, the ALJ found that Plaintiff had the following severe impairments: "bilateral hip disorders requiring resurfacing surgeries (20 CFR

---

[3] The Administrative Record is CM/ECF Docket Numbers 11-1 through 11-10. Plaintiff's Opening Brief is at Docket Number 14 and the Commissioner's Brief is at Docket Number 17.  Plaintiff did not file an optional Reply Brief.

404.1520(c)).” [AR 34 ¶ 3.] The ALJ found that these impairments significantly limit Plaintiff's ability to perform basic work activities. [AR 34.]

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). [AR 34 ¶ 4.]

Before proceeding to step four, the ALJ found Plaintiff had the Residual Functional Capacity (“RFC”) to perform light work with the following limitations:

> The claimant is limited to four hours of standing/walking, the rest sitting without limitation, in an eight-hour workday. The claimant must be able to change positions as often as every 30 minutes for one to two minutes, must avoid all climbing of ladders, ropes, and scaffolds, and is limited to occasionally performing all other postural activities. The claimant is precluded from all exposure to dangerous work hazards such as unprotected heights and exposed moving machinery, and he is precluded from all uneven/unpaved surface walking tasks. The claimant will be off-task for up to three percent of the workday due to momentary symptom distractions.

[AR 34-35 ¶ 5.][4]

---

[4] The regulations define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

At step four, the ALJ compared the RFC assessed to the demands of Plaintiff's past relevant work as a professional athlete and found that Plaintiff is unable to perform any past relevant work.  [AR 39 ¶ 6.]

At step five, the ALJ made findings of Plaintiff's vocational profile.  The ALJ stated that on the alleged disability onset date Plaintiff was 30 years old, which the regulations define as a younger individual.  [AR 39 ¶ 7 (citing 20 C.F.R. § 404.1563).]  The ALJ noted that Plaintiff has at least a high school education and found that transferability of job skills is not material to the determination of disability.  [AR 39 ¶¶ 8, 9.]  Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including ticket seller, assembler, small products and security guard.  [AR 39 ¶ 10.]  Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined in the SSA from the alleged onset date, March 27, 2019, through the date of the decision.  [AR 40 ¶ 11.]

Plaintiff raises two issues:

(1) Whether the ALJ erred in assessing limitations in the RFC that are not supported by substantial evidence.

(2) Whether the ALJ properly evaluated Plaintiff's subjective symptom testimony.  [Dkt. No. 14 at 1-25.][5]

## II.   Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the agency's decision to deny benefits.  A court will vacate the agency's decision "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020) (citations omitted).  "Substantial evidence means

---

[5] For ease of the Court, Plaintiff's subjective symptom claim will be addressed first.

more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.*; *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (same).

It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record. *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). Where this evidence is "susceptible to more than one rational interpretation" the ALJ's reasonable evaluation of the proof should be upheld. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Tran v. Saul*, 804 F. App'x 676, 678 (9th Cir. 2020).[6]

Error in Social Security determinations is subject to harmless error analysis. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). Error is harmless if "it is inconsequential to the ultimate nondisability determination" or, despite the legal error, "the agency's path is reasonably discerned." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

## III. Discussion

### A. The ALJ Properly Considered Plaintiff's Subjective Symptom Testimony

#### 1. Applicable Law

In the absence of proof of malingering, an ALJ may reject a litigant's believability by identifying "specific, clear, and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). This requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and ... explain what evidence

---

[6] Although statements in unpublished Ninth Circuit opinions "may prove useful [] as examples of the applications of settled legal principles," the Ninth Circuit has cautioned lower courts not to rely heavily on such memorandum dispositions particularly as to issues of law. *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th Cir. 2020) ("a nonprecedential disposition is not appropriately used ... as the pivotal basis for a legal ruling by a district court").

undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler*, 775 F.3d at 1102); *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015); *see also Smartt v. Kijakazi*, 53 F. 4th 489, (9th Cir. 2022) ("Ultimately, the 'clear and convincing' standard requires an ALJ to show [their] work[.]").  Thus, to satisfy the substantial evidence standard, the ALJ must provide specific, clear, and convincing reasons which explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony.  *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024). (emphasis in original).

An ALJ may consider a claimant's conservative treatment when evaluating credibility, particularly when the claimant "responded favorably" to minimal treatment.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Burkett v. Berryhill*, 732 F. App'x 547, 552 (9th Cir. 2018) (same).  Proof of "conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment."  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Mojarro v. Berryhill*, 746 F. App'x 672 (9th Cir. 2018) (same).  An ALJ may also rely on an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment," and the claimant's daily activities.  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Loader v. Berryhill*, 722 F. App'x 653, 655 (9th Cir. 2018) (same).

An ALJ may consider a variety of factors in analyzing the believability of a claimant's symptom testimony, including "ordinary techniques of credibility evaluation."  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Evans v. Berryhill*, 759 F. App'x 606, 608 (9th Cir. 2019) (same).

An ALJ can consider whether there is a lack of objective medical evidence supporting a claimant's allegations.  However, this factor "cannot form the sole basis" for discounting subjective symptom testimony.  *Burch*, 400 F.3d at 681; *Davis v. Berryhill*, 736 F. App'x 662, 665 (9th Cir. 2018).

A court must "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Courts, therefore, may not speculate as to the basis for unexplained conclusions but, rather, must only consider the reasoning actually given by the ALJ. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

Even if an ALJ impermissibly relies "on one of several reasons in support of an adverse credibility determination," the error is harmless if "the ALJ's remaining reasoning and *ultimate credibility determination* were adequately supported by substantial evidence in the record." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citation omitted).

### 2. Plaintiff's Subjective Symptom Testimony

Plaintiff alleged an inability to work due to his right hip replacement, left hip replacement, and severe arthritis. [AR 270.] As pertinent to the disputed issue, Plaintiff testified at the hearing that he lives with his wife and two children. [AR 53.] He testified that he was previously a professional soccer player. [AR 56-57.] Plaintiff stated that he had bilateral hip surgeries in 2019. [AR 57.] He stated that he tried to return to playing professional soccer in 2021 but is no longer pursuing this goal. [AR 58-59.] Plaintiff testified that he talks to his orthopedic doctor, Dr. Su, M.D., every month. [AR 60-61.] Plaintiff testified that he is not able to sit or stand for long periods of time and that the most he can stand, or sit, is one hour at a time and then he needs to change positions. [AR 60-61.] Plaintiff testified that he needs a cane if he walks longer than ten minutes. [AR 62.] Plaintiff testified that he has "okay" and "bad days." [AR 63.] On "bad days" Plaintiff requires bedrest for two to four days with no physical activity. [AR 63.] Plaintiff testified that he has "bad days" once or twice a week. [AR 63.] Plaintiff testified that his wife does a lot of the household work. [AR 64.] Plaintiff

testified that he elevates his legs throughout the day. [AR 64.] Plaintiff stated that he has tried to work but is not able to complete his work tasks. [AR 65.] Plaintiff testified that after his surgeries he tried to make a comeback to soccer, but the pain was too much. [AR 66-67.] He stated his hip conditions became debilitating at the end of 2020 or beginning of 2021. [AR 66.]

In an Exertion Questionnaire prepared by Plaintiff in June 2021, he reported that he has trouble sitting, driving, and doing household chores. [AR 280.] Plaintiff reported that he walks as minimally as possible and drives only when absolutely necessary. [AR 280-81.] Plaintiff stated that he can climb one flight of stairs inside his apartment and can lift his two-year-old in and out of the car. [AR 281.] Plaintiff reported that he requires rest periods/naps during the day. [AR 283.] Plaintiff takes pain medication. [AR 283.] Plaintiff reported that he does not use a cane but stated he may need one for longer distances. [AR 283.]

In an Adult Function Report prepared by Plaintiff in August 2021, he reported he does his best to take care of his two children and help his wife, but his impairments make it very difficult. [AR 299.] Plaintiff stated that his hip pain affects his sleep. [AR 300.] He has difficulty performing certain personal care activities due to nerve pinching in his legs. [AR 300.] Plaintiff requires reminders to take care of personal needs and grooming and to take medication. [AR 301.] Plaintiff stated that he can prepare simple meals and perform chores such as cleaning the kitchen, making beds, ironing, and taking out the trash. [AR 301.] Plaintiff is able to drive, go out alone, and shop in stores. [AR 302.] Plaintiff estimated that he could walk for ten minutes before needing to stop and rest for one hour. [AR 304.]

### 3.    Analysis

Plaintiff contends that the ALJ impermissibly rejected Plaintiff's subjective symptom testimony. [Dkt. No. 14 at 17-24.] The Commissioner responds that the ALJ's conclusions regarding Plaintiff's subjective statements were supported by substantial evidence. [Dkt. No. 17 at 3-7.] "To determine whether a claimant's subjective symptom testimony is credible, the ALJ must engage in a two-step analysis: 'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.' " *Ferguson*, 95 F.4th *Id.* at 1199 (citing *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)). If step one is satisfied, the ALJ can only reject the plaintiff's testimony for "clear and convincing reasons," which ultimately requires the ALJ to "show [their] work." *Id.* (citations and internal quotation marks omitted).

At step two of the subjective symptom testimony analysis, an ALJ must identify which testimony is not credible and specifically link that testimony to evidence in the record that undercuts the credibility of the testimony. *See Brown-Hunter*, 806 F.3d at 494; *accord Ferguson*, 95 F.4th at 1200-01. The ALJ may not simply make the conclusory statement that Plaintiff's testimony is not credible because it is inconsistent with the record and then proceed with an RFC analysis. *Brown-Hunter*, 806 F.3d at 493-94. This is because the obligation to provide clear and convincing "reasons" for discounting a plaintiff's testimony is separate and distinct from any obligation to summarize medical record evidence that supports an RFC determination. *Id.*

Here, the ALJ found that Plaintiff had severe impairments of bilateral hip disorders requiring resurfacing surgeries. [AR 34 ¶ 3.] The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, Plaintiff's statements "concerning the intensity, persistence, and limiting effects of these symptoms

9

are not entirely consistent with the medical evidence and the other evidence in the record for the reasons explained in this decision."  [AR 36.]

The ALJ did not find that Plaintiff had engaged in any degree of malingering, and therefore was obliged to provide at least one "specific, clear, and convincing" reason supported by substantial evidence for discounting Plaintiff's testimony concerning the intensity, persistence and limiting effects of his symptoms.  *Trevizo,* 871 F.3d at 678.  The Court finds that the two reasons the ALJ provided for discounting Plaintiff's testimony—objective medical evidence and daily activities—meet this burden.  [AR 35-38.]

### a)    Inconsistent Statements with the Objective Medical Evidence

First, the ALJ summarized Plaintiff's testimony including that he had right and left hip surgeries, is unable to sit or stand for long periods, and can at most stand or sit for one hour at a time.  [AR 35, 36.]  The ALJ then explained that the persuasiveness of Plaintiff's allegations regarding the severity of his symptoms and limitations was diminished because his allegations were greater than expected in light of the objective medical evidence.  [AR 35-38.]  The ALJ acknowledged Plaintiff's medical records indicating that he presented with right hip pain in April 2019; that physical examination showed significant pain with range of motion in the right hip; and x-rays revealed evidence of severe osteoarthritis and impingement morphology in the right hip and narrowing and impingement morphology in the left hip.  [AR 36.]  The ALJ cited to an MRI of the right hip that was significant for degenerative changes, advanced chondral loss, and edema.  [AR 36 (citing AR 337-38).]  The ALJ noted that Plaintiff underwent right hip resurfacing surgery in May 2019 and left hip resurfacing surgery in December 2019 with surgeon Edwin Su, M.D.  [AR 36 (citing AR 343, 369).]  The ALJ explained that in July 2019, after the right hip surgery, Plaintiff reported improvements in range of motion and strength, that he could put on his shoes

and socks with ease, that he could walk unlimited distances and use a stationary bike. [AR 36 (citing AR 462).] The ALJ further noted that physical examination showed no tenderness, no evidence of joint instability, and no pain with straight leg raising test. [AR 36 (citing AR 462).]

The ALJ noted that in March 2020, after the left hip surgery, Plaintiff reported occasional pinching in the front of his hip, but improved pain. [AR 36 (citing AR 375).] The ALJ highlighted that Plaintiff reported to Dr. Su that he could walk unlimited distances and was doing well in physical therapy. [AR 36 (citing AR 375).] The ALJ pointed out that Plaintiff's physical examination showed no tenderness, excellent range of motion, improving strength, and no instability of the joint; his neurologic examination was normal; and x-rays showed no evidence of complication. [AR 36 (citing AR 375-76).]

The ALJ noted that in November 2020, Plaintiff reported to Dr. Su that his right hip was doing "very well, without any pain or limitations"; his left hip still gave him discomfort particularly when playing soccer; that he could feel the pain after one and a half hours of strenuous activity; but, now that he was not playing soccer because the soccer season had ended he also had no pain in the left hip. [(AR 37 (citing AR 396-97).] The ALJ pointed out that Plaintiff reported to Dr. Su that he had good flexibility, no limping, and could walk unlimited distances. [AR 37 (citing AR 397).] The ALJ further noted that Dr. Su's physical examination of Plaintiff found good toe-heel gait, tenderness over the left medial groin, excellent range of motion, and full hip flexor strength. [AR 37 (citing AR 396-97).]

The ALJ highlighted the June 2021 consultative examination with Dr. O'Leary, who observed that Plaintiff had normal range of motion of both hips and full motor strength and intact sensation in all extremities. [AR 37 (citing AR 428-30).]

The ALJ further pointed out that in May 2022, Plaintiff reported to Dr. Su that he had no issues with his right hip but reported pain and weakness on the left side. [AR 37 (citing AR 470).] Upon examination, Dr. Su observed no tenderness and excellent range of motion of the left hip, and he noted that x-rays of the hips showed the implants in good position with no evidence of complications. [AR 37 (citing AR 470).] The ALJ further noted that a subsequent MRI of the left hip showed only some abductor tendinosis without tear, which Dr. Su found did not provide an explanation of Plaintiff's symptoms. [AR 37 (citing AR 470-71, 480-81).]

The ALJ properly discounted Plaintiff's subjective symptom statements and testimony because they were at least in part inconsistent with the objective medical evidence. *See Chaudhry v. Astrue*, 688 F.3d 661, 667, 671-72 (9th Cir. 2012) (ALJ's finding that objective medical evidence did not support plaintiff's pain allegations was specific, clear, and convincing reason for discounting plaintiff's statements); *Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023) (ALJ's conclusion that objective medical evidence was inconsistent with plaintiff's statements of mental symptoms was specific, clear, and convincing reason for discounting his statements). "After careful consideration of the entire record," the ALJ found some of Plaintiff's subjective symptom statements and testimony unsupported by and inconsistent with the medical evidence. [AR 36; *see* AR 35-37; *see also Bell-Shier v. Astrue*, 312 F. App'x 45, 49 (9th Cir. 2009) (upholding ALJ's rejection of plaintiff's pain and limitation claims when ALJ "examine[d] the entire record").

While inconsistencies with the objective medical evidence cannot be the sole ground for rejecting a claimant's subjective testimony, inconsistencies are factors that the ALJ may consider when evaluating subjective symptom testimony. *Burch*, 400 F.3d at 681; *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001); *see also Smartt*, 53 F.4th at 498 ("When objective medical

12

evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.") Accordingly, the ALJ properly considered the objective medical evidence in discounting Plaintiff's subjective symptom testimony.

### b)   Daily Activities

Second, the ALJ noted that Plaintiff's daily activities were inconsistent with disability.  [AR 36-38.]  The ALJ highlighted that Plaintiff reported to his treating providers that he was able to engage in numerous activities, including strenuous exercise, that directly contradicted his testimony that his hips became debilitating at the end of 2020 or the beginning of 2021.  [AR 35-37.]  The ALJ noted that Plaintiff reported in July 2020 that he was able to complete 45 minutes of training involving moderate to high impact activities before experiencing soreness in his left hip.  [AR 36 (citing AR 382).]  The ALJ pointed out that in August 2020, Plaintiff reported that he wanted to return to playing professional soccer.  [AR 36 (citing AR 468).]  The ALJ further noted that Plaintiff reported no adverse effects from a training session the previous day [August 5, 2020], and his functional limitations were listed as "sports specific training: acceleration/deceleration, change of direction and pivoting/twisting."  [AR 36 (citing AR 386-87).]  The ALJ pointed out that in May 2022, Plaintiff reported that he did not have pain with activities of daily living and could walk unlimited distances.  [AR 37 (citing AR 470).]

Thus, the ALJ summarized Plaintiff's symptom testimony and then proceeded to explain why both the medical record *and* Plaintiff's reported level of functioning are inconsistent with his statements about the intensity, persistence, and limiting effects of his pain.  [*See* AR 35-38.]  It is clear from the opinion as a whole that the ALJ thoroughly considered Plaintiff's testimony, found Plaintiff's daily activities as another reason the record does not support the severity of Plaintiff's alleged symptoms, and accordingly concluded Plaintiff was not as limited as alleged.  [*Id.*]; *see also Dewey v.*

*Colvin*, 650 Fed. App'x 512, 514 (9th Cir. 2016) ("Claimant performed a full range of daily activities – including attending college full time – that were inconsistent with his subjective complaints, he improved when he used behavior modification techniques, and the objective medical evidence showed that he was not as limited as he claimed."). The ALJ reasonably concluded that Plaintiff's reports to his treating providers that he could walk unlimited distances, perform activities of daily living without pain, and only had left hip pain with strenuous activity undermined his subjective testimony. While Plaintiff likely can no longer play professional soccer, that does not mean that he cannot perform at least light work.

In sum, the ALJ provided specific and legitimate reasons for discounting Plaintiff's symptom testimony. *Trevizo*, 871 F. 3d at 675. Under the relevant standard of review, "[i]f the evidence can reasonably support either affirming or reversing the [ALJ's] conclusion, th[is] court may not substitute its judgment for that of the [ALJ]." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). As such, the Court finds substantial evidence supports the ALJ's evaluation of Plaintiff's subjective symptom testimony. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

## B.    The RFC Determination

Plaintiff challenges the ALJ's RFC determination that he will be "off-task for up to three percent of the workday" and the ALJ's conclusion that he could only stand or walk for up to four hours of the workday contending that the limitations are not supported by substantial evidence. [Dkt. No. 14 at 9-16.]

### 1.    Applicable Law

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling 96-8P, 1996 WL 374184, at *1

(1996).  It reflects the most a claimant can do despite their limitations.

*Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996).  An RFC determination

must be based on all of the relevant evidence, including the diagnoses,

treatment, observations, and opinions of medical sources, such as treating and

examining physicians.  20 C.F.R. § 404.1545.  The ALJ, not the claimant's

physician, "is responsible for translating and incorporating clinical findings

into a succinct RFC."  *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006

(9th Cir. 2015).  It is the ALJ's responsibility to resolve conflicts in the

medical evidence and ambiguities in the record.  *Ford*, 950 F.3d at 1149.

Where this evidence is "susceptible to more than one rational interpretation"

the ALJ's reasonable evaluation of the proof should be upheld.  *Ryan*, 528

F.3d at 1198.

　　　For claims filed on or after March 27, 2017, new regulations govern how

an ALJ must evaluate medical opinion evidence.  *See* Revisions to Rules

Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg.

5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.  Under the new

regulations, special deference is no longer given to the opinions of treating

and examining physicians on account of their relationship with a claimant,

and an ALJ's "decision to discredit any medical opinion, must simply be

supported by substantial evidence."  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th

Cir. 2022) ("the requirement that ALJs provide 'specific and legitimate

reasons' for rejecting a treating or examining doctor's opinion, which stems

from the special weight given to such opinions, is [ ] incompatible with the

revised regulations") (citation omitted); 20 C.F.R. §§ 404.1520c(a), 416.920c(a)

("We will not defer or give any specific evidentiary weight, including

controlling weight, to any medical opinion(s) ..., including those from [a

claimant's] medical sources.").  The new regulations require ALJs to consider

and evaluate the persuasiveness of all medical opinions or prior

administrative medical findings from medical sources.  *See*

20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b).

In determining how "persuasive" a medical source's opinions are, an ALJ must consider the following factors: supportability, consistency, treatment or examining relationship, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). "Supportability" and "consistency" are the most important factors to be considered when evaluating the persuasiveness of medical opinions and, therefore, the ALJ is required to explain how both factors were considered. *See* 20 C.F.R. § 404.1520c(b)(2), 416.920c(b)(2). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.' " *Woods*, 32 F.4th at 791-92 (citing 20 C.F.R. § 404.1520c(c)(1)); 20 C.F.R. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.' " *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(c)(2)); 20 C.F.R. § 416.920c(c)(2). While the ALJ's decision must articulate how the ALJ considered supportability and consistency, the decision need not explain the remaining factors unless the ALJ is deciding among differing yet equally persuasive opinions or findings on the same issue. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b); *Woods*, 32 F.4th at 792.

An RFC is defective if it fails to take a plaintiff's limitations into account. *Valentine v. Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). However, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (noting that "components of an RFC assessment" need not necessarily "line up with an expert medical opinion"); *see also McIntosh v. Colvin*, 2018 WL 1101102, at *5 (S.D. Cal. Feb. 26, 2018) ("There is no requirement that the RFC recite medical opinions verbatim, rather the ALJ is responsible for translating and incorporating medical findings into a succinct

16

RFC.").  Finally, it is well established that RFC determinations are legal decisions, not medical opinions.  *Valerie C. v. Berryhill*, 2019 WL 450675, at *6 (C.D. Cal. Feb. 5, 2019).

### 2.    Relevant Medical Evidence

In June 2021, orthopedic surgeon Cornelius O'Leary, M.D., performed a consultative examination on Plaintiff noting that he complained of bilateral hip pain, status post total hip replacements in May and December 2019, and bilateral knee pain.  [AR 426.]  Dr. O'Leary observed that Plaintiff had a normal gait pattern and could get on and off the examination table without assistance.  [AR 428.]  Dr. O'Leary also noted that Plaintiff displayed an antalgic gait and needed a cane at all times.  [AR 428.]  Dr. O'Leary found that Plaintiff was unable to stand on his heels and toes and that straight leg raising test was positive bilaterally, radiating to the bilateral feet.  [AR 428, 29.]  Dr. O'Leary further noted that range of motion in the bilateral hips was within normal limits and Plaintiff possessed full motor strength and intact sensation in all extremities.  [AR 428-30.]  Dr. O'Leary opined that Plaintiff could lift/carry 20 pounds occasionally and ten pounds frequently, he could stand/walk less than two hours and sit for two hours in an eight-hour workday, he could occasionally stoop, climb, kneel, crouch, crawl, squat, engage in prolonged ambulation, and walk on uneven terrain.  [AR 431.]

In July 2021, the State Agency medical expert, L. Lo, M.D., reviewed Plaintiff's medical records; described Plaintiff's impairments as severe; and concluded that Plaintiff could stand or walk approximately six hours out of an eight-hour workday.  [AR 83-85.]  In December 2021, these findings were affirmed by another State Agency medical expert, M. Ford, M.D.  [AR 98-101.]  Drs. Lo and Ford opined that Plaintiff could perform light work, would need a cane for long distance ambulation, and could occasionally perform postural activities.  [AR 85-87, 101-103.]  Both doctors supported their opinions by

citing to Plaintiff's history of bilateral hip replacements and findings from the orthopedic consultative examination.  [AR 86, 102 (citing AR 425-31).]

In August 2022, Dr. Su opined that Plaintiff could stand for 60 minutes at one time, for a total of two hours in a workday and sit for 60 minutes at one time, for a total of two hours in a workday.  [AR 487.]  Dr. Su further opined that Plaintiff could occasionally and frequently lift up to 20 pounds, could occasionally bend, stoop, balance, climb ladders/stairs, operate motor vehicles, tolerate heat/cold, tolerate dust, smoke or fumes, tolerate noise exposure, and needed to elevate his legs.  [AR 487.]  Dr. Su also opined that Plaintiff should never work around dangerous equipment.  [AR 487.]

### 3.    The ALJ's Decision

As set forth above, the ALJ found that Plaintiff could perform light work with limitations to four hours of standing/walking in an eight-hour-workday and will be off task for up to three percent of the workday due to momentary symptom distractions.  [AR 34-35 ¶ 5.]  In determining Plaintiff's RFC, the ALJ stated that she considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p.  [AR 35.]  The ALJ also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.  [AR 35.]

The ALJ found the opinion of consultative examiner Dr. O'Leary not persuasive.  [AR 37-38.]  The ALJ found that although Dr. O'Leary supported his opinion with Plaintiff's subjective complaints of bilateral hip pain and history of hip replacement surgeries, Dr. O'Leary's opinion is inconsistent with the objective findings from the underlying examination.  [AR 38.]  For example, the ALJ explained that Dr. O'Leary noted that the range of motion in Plaintiff's hips was within normal limits bilaterally, and that Plaintiff also possessed full motor strength in all extremities.  [AR 38 (citing AR 430).]  The

18

ALJ found that Dr. O'Leary's report contains internal inconsistencies, which renders it less persuasive. [AR 38.] The ALJ explained that at one point Dr. O'Leary noted that Plaintiff could get on and off the examination table without assistance and had normal gait pattern and then stated that Plaintiff had antalgic gait, rose from the chair with difficulty, and was unable to stand on his heels and toes. [AR 38 (citing AR 428).] The ALJ further explained that Dr. O'Leary's opinion is inconsistent with other physical examinations in the record showing good toe and heel gait and negative straight leg raising test. [AR 38 (citing AR 396-97, 527-28).]

The ALJ also found the opinions of orthopedic surgeon, Dr. Su to be unpersuasive. [AR 38.] The ALJ noted that in May 2019, Dr. Su assessed that Plaintiff was "incapacitated" and had limitations bending or twisting, using public transportation, lifting, climbing stairs/ladders, and standing. [AR 38 (citing AR 457).] The ALJ explained that this opinion was assessed prior to the Plaintiff's recovery from both hip surgeries, and it is minimally relevant and inconsistent with more recent findings in the record. [AR 38.] The ALJ also explained that Dr. Su provided very little written explanation in support of the limitations assessed, particularly the limitations regarding noise, temperature and respiratory irritants, which the ALJ found have no basis in the record. [AR 38.] The ALJ also found Dr. Su's opinion inconsistent with his own progress notes from 2022 which found no evidence of tenderness or instability in Plaintiff's hips, in addition to excellent range of motion, normal neurologic and vascular examinations, full abduction strength on the right, and mildly decreased abduction strength on the left. [AR 38 (citing AR 470).]

The ALJ also considered the opinions of State Agency physicians Drs. Lo and Ford and found them to be only partially persuasive. [AR 37.] Drs. Lo and Ford opined that Plaintiff could perform light work, would need a cane for long distance ambulation, could occasionally perform postural activities, and

concluded that Plaintiff could stand or walk approximately six hours out of an eight-hour workday. [AR 85-87, 101-103.] The ALJ noted that the doctors supported their opinions by citing to Plaintiff's history of bilateral hip replacements and findings from the orthopedic consultative examination. [AR 37 (citing AR 425-31).] The ALJ explained that a somewhat reduced standing/walking limitation and a limitation regarding changing of positions is consistent with physical examination findings of antalgic gait [AR 37 (citing AR 527-28)] and progress notes noting weakness in the left hip [AR 37 (citing AR 470-71)]. The ALJ found that the use of a cane is inconsistent with Plaintiff's statements in multiple progress notes that he could walk for unlimited distances [AR 37 (citing AR 375, 397, 462, 470)].

### 4.    Analysis

Plaintiff argues that the ALJ erred because each aspect of the RFC finding, *i.e.*, four hours of standing/walking in an eight-hour-workday and being off task for up to three percent of the workday due to momentary symptom distractions does not correspond to a specific limitation found in a medical opinion. [Dkt. No. 14 at 9-15.] Plaintiff, however, does not cite any case law that supports this proposition and instead relies on three cases where there was no medical opinion at all. [Dkt. No. 14 at 13-14.]; *See de Gutierrez v. Saul*, 2020 WL 5701019, at *5 (E.D. Cal. Sep. 24, 2020) ("As to Plaintiff's mental impairments, there are no opinions in the record from treating or examining physicians related to Plaintiff's functional limitations."); *Perez v. Sec'y of Health & Human Servs.*, 958 F.2d 445, 446 (1st Cir. 1991) ("It is true that the record does not contain any medical evaluation of claimant's physical residual functional capacity."); *Goolsby v. Berryhill*, 2017 WL 1090162, at *8 (E.D. Cal. Mar. 22, 2017) ("Because the record did not include any opinions from treating or examining physicians related to Plaintiff's mental abilities, the ALJ clearly rendered her own medical findings that Plaintiff could perform 'simple routine tasks' in the RFC.").

Contrary to Plaintiff's contention, the ALJ is not required to rely upon a specific medical opinion in formulating the RFC. The regulatory framework provides that the ALJ must formulate the RFC "based on all the relevant evidence in [their] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1). Indeed, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *See Stubbs-Danielson*, 539 F.3d at 1174-75 (affirming the ALJ's translation of moderate functional limitations into the claimant's RFC). In essence, there "is a presumption that ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow*, 53 F.4th at 488.

Plaintiff does not challenge the ALJ's consideration of the medical opinion evidence. The ALJ considered Dr. O'Leary's opinion that Plaintiff could only stand and walk for less than 2 hours per workday and found his opinion unsupported due to internal inconsistencies in his own report and inconsistent with other examination findings in the record. [AR 37-38, 431.] Likewise, the ALJ acknowledged Dr. Su's opinion that Plaintiff could only stand for up to two hours per workday, but found his opinion unpersuasive, because it was directly contradicted by Dr. Su's own contemporaneous progress notes, which found no tenderness, excellent range of motion and only mildly decreased abduction strength on the left. [AR 38, 375, 396-97, 462, 470.] The ALJ also considered the State Agency physicians RFC findings that Plaintiff could perform light work, including standing or walking for six hours per day and the use of a cane for walking, and found this partially persuasive, concluding that the evidence of an occasional antalgic gait and some weakness in the left hip supported reducing Plaintiff's ability to stand/walk, but that a requirement for an assistive device for walking was inconsistent with the

21

evidence as a whole, because Plaintiff repeatedly reported that he could walk for unlimited distances.  [AR 37, 470.]

Plaintiff argues that the ALJ was required to pick and choose his RFC findings from the limitations found by the various medical professionals.  This is simply not an accurate statement of the applicable law.  The ALJ found that while the conclusions by Drs. Lo and Ford that Plaintiff could stand or walk for up to six hours were overly permissive, the conclusions by Drs. O'Leary and Su that Plaintiff could not stand or walk for more than two hours was overly restrictive.  Based on the evidence as a whole, including the numerous unremarkable objective findings found in Plaintiff's treatment notes and his repeated representations that he could walk unlimited distances and even engage in strenuous training, the ALJ reasonably concluded that Plaintiff could stand or walk for up to four hours per workday.

The ALJ also included a limitation that Plaintiff would be off task up to three percent of the workday due to momentary symptom distractions.  [AR 34-35 ¶ 5.]  Plaintiff argues that that the RFC finding is unsupported by substantial evidence because no medical opinion justifies the exact off-task percentage that the ALJ identified.  [Dkt. No. 14 at 9-16.]  The ALJ explained that understanding that Plaintiff's momentary periods of increased symptoms can cause distraction, she included brief periods of distraction into the work limitations, including the ability to be off task 3% of the workday beyond what is already accounted in the RFC (*i.e.*, physical exertional and on exertional limitations meant to reduce pain and/or safety distractions).  [AR 40.]  The ALJ further explained that this amounts to a couple of minutes hourly and is meant to accommodate those brief periods of distraction caused by increased symptoms even when working in a setting taking into account Plaintiff's functional limitations.  [AR 40.]  The ALJ reviewed the evidence, interpreted it in a light most favorable to Plaintiff, and reached reasonable conclusions about the plausible extent of his functional limitations.  Plaintiff points to no

evidence of any further limitations.  Even if the ALJ erred by including an unsupported off-task limitation, any "overinclusion of debilitating factors is harmless." *Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995).

Based on the overall record — including the medical evidence, Plaintiff's treatment history, his reports and testimony, and the opinion evidence, which the ALJ found partially persuasive for the reasons and to the extent cited — the ALJ found that Plaintiff retains the RFC to perform a range of light work with specified limitations which take into account his walking/standing limitations and that he will be off-task 3% of the workday.  [AR 34-38.]  Again, while Plaintiff may have a different interpretation of the medical evidence, he does not show that the ALJ's interpretation was error.  *See Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").  A decision to deny benefits will be overturned only if it is it not supported by "substantial evidence or it is based on legal error." *Id.* (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)).  Accordingly, the RFC set by the ALJ is supported by substantial evidence and the Court finds no reversible error in the assessment of Plaintiff's RFC. *Coleman*, 979 F.3d at 755; *Biestek*, 139 S. Ct. at 1154.

## IV.    Order

For all the reasons stated above, the ALJ's decision is affirmed.  A separate judgment will issue.

IT IS SO ORDERED.

Dated:  March 26, 2025

_____
HON. PATRICIA DONAHUE
UNITED STATES MAGISTRATE JUDGE